

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MRC PERMIAN COMPANY, | § | |
| | § | |
| Appellant/Cross Appellee, | § | |
| | § | No. 08-19-00124-CV |
| v. | § | Appeal from the |
| POINT ENERGY PARTNERS PERMIAN LLC; TJ BAR, LLC; TUBB MEMORIAL, AN OREGON LIMITED | § | 143rd District Court |
| PARTNERSHIP; PLAINSCAPITAL BANK, TRUSTEE FOR THE DEBORAH | § | of Loving County, Texas |
| JACKSON REVOCABLE TRUST; BANK OF AMERICA, N.A., TRUSTEE | § | (TC# 17-06-869) |
| FOR THE JANELLE JACKSON MARITAL TRUST PART M2, JANELLE | § | |
| JACKSON MARITAL TRUST PART M1, AND FAMILY CREDIT SHELTER | § | |
| TRUST PART B; VORTUS INVESTMENT ADVISORS, LLC; JOHN | § | |
| SABIA; and BRYAN MOODY, | § | |
| | § | |
| Appellees/Cross-Appellants. | § | |
| | § | |

## CONCURRING AND DISSENTING OPINION

The concurring and dissenting opinion issued March 15, 2021 is withdrawn, and the following is the concurring and dissenting opinion.

While I agree with the majority opinion on the first and second questions certified from the trial court, I disagree on the third question addressing tortious interference with contract.

The primary term of MRC's lease ended on February 28, 2017. Pursuant to the continuous operations clause, MRC could only extend the primary term by spudding another well by May 21, 2017 (180 days from the date of the last spudded well). And as of that date, the summary judgment record shows that objectively there were no new wells spudded on the leased premises. MRC admits that it had not even scheduled a rig to be on the lease premises until June of that year.

On June 8, 2017, Point Energy Partners Permian, LLC executed oil and gas leases with: TJ Bar, LLC; Tubb Memorial; PlainsCapital Bank (as trustee of the Deborah Jackson Revocable Trust); and Bank of America (as trustee of the Janelle Jackson Marital Trust et. al).[1] MRC first raised its force majeure claim on June 13, 2017 through a letter to the four lessors. Point Energy had thus already entered into its leases almost a full week before MRC ever raised the force majeure issue.

MRC would need to prove four elements for its tortious interference with contract claim: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) actual damages or loss. *Prudential Ins. Co. of Am. v. Fin. Rev. Services*, *Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). Point Energy and the other tort defendants filed a no-evidence motion for summary judgment that attacked several of these elements, including the element of intent.

MRC's response to the no-evidence motion outlines testimony and documents which suggests the principals of Point Energy had early designs on the MRC's leasehold interest, and

---

[1] Point Energy entered into a new lease with TJ Bar, LLC on June 14, but effective on June 7, 2017, that was denominated as a "top lease agreement." Point Energy later converted the other three leases to top leases on August 8, 2018, but with effective dates of June 7, 2017.

that they may have made misrepresentations about Point Energy's ability to develop the minerals on the property. At the very least, the agents for some of the lessors failed to investigate Point Energy which was a new and unproven entity. One of Point Energy's agents may have also misrepresented his position in order to convince other agents for the lessors to sign with Point Energy. But even if true, none of that evidence proves an intent on June 7, 2017 (the date of the new leases) to divest MRC of its legal entitlement to the leasehold interest. There is no evidence that anyone other than MRC as of that date was aware of the factual events giving rise to the later claim of a force majeure. At best, MRC suggests that given *its* construction of the force majeure clause, Point Energy should have realized there was a sixty-day buffer period following the last day to spud a well in which MRC could *potentially* raise a force majeure claim. That claim, however, would depend on Point Energy being prescient enough to foresee the existence of a force majeure event (here, occurring away from the premises on a drilling rig that Point Energy had no connection to) and that this Court would eventually rule against Point Energy on the construction of the clause (even assuming we are the last word on that subject).

Nor would I find that Point Energy and the other tort defendants' questioning of, and then litigating the force majeure issue, rises to the level of intentional interference with contract. Both parties raise well-reasoned arguments advocating for their interpretation of the force majeure clause. Neither party can identify a precedent four-square on point that controls the disposition of the legal question. To find an intentional interference with contract based on the advocacy of the competing arguments here would effectively "tortify" every good faith dispute over contract interpretation that might make mineral acreage available for development. Based on the rationale better explained in *Dorfman v. JPMorgan Chase Bank*, *N.A.*, No. 02-17-00387-CV, 2018 WL 5074769, at *6, *9-10 (Tex. App.--Fort Worth Oct. 18, 2018, no pet.) (mem. op.), I would affirm

3

the trial court's grant of the summary judgment on the tortious interference with contract claims.


JEFF ALLEY, Justice

April 28, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.